**PAUL E. LEHMAN, INC.**

v.

**The UNITED STATES.**

**No. 270–81C.**

United States Court of Claims.

Feb. 24, 1982.

Jack M. Stover, Harrisburg, Pa., Atty. of record, for plaintiff. Shearer, Mette & Woodside, Harrisburg, Pa., of counsel.

Michael J. Denton, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and DAVIS and KUNZIG, Judges.

## ORDER

PER CURIAM:

The decision rendered this date in this case was adopted by the court before Judge Kunzig's death.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

The question before us, raised by defendant's motion for summary judgment, is whether under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (Supp. III 1979),[1] a contractor may obtain in this court direct judicial review of a contracting officer's decision, where (1) the contract was entered into before the effective date of the Act, (2) the contractor filed his claim after the effective date, (3) the contractor did not certify its claim, as the Act requires, but (4) the contracting officer entertained the claim and decided the merits. We hold that the contractor's failure to certify precludes it from challenging directly the contracting officer's decision in this court. We therefore dismiss the petition.

### I.

A. Prior to the Contract Disputes Act of 1978 ("the Act"), a contractor wishing to challenge a contracting officer's decision was required to appeal the decision to the agency's board of contract appeals, where a trial *de novo* was held. If the contractor was dissatisfied with the board's decision, it could challenge that decision in this court. Under the Wunderlich Act, 41 U.S.C. § 321 (1976), review in this court is based upon the record before the board. The decision of the board is "final and conclusive unless the same is fraudulent or capricious or arbitrary *or so grossly erroneous as necessarily to imply bad faith*, or is not supported by substantial evidence." *Id.*

One of the major changes the Act made in the litigation of claims by government contractors was to give contractors challenging a contracting officer's decision the election of either following the old procedures, 41 U.S.C. § 606, or of bypassing the contract appeals board and filing suit on the claim directly in this court, *id.* § 609(a)(1). In those judicial proceedings the court conducts a trial *de novo*. *Id.* § 609(a)(3).

1. All citations to the Act are to Supp. III of the      1976 edition of the United States Code.

Section 6(c)(1), 41 U.S.C. § 605(c)(1) requires that:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

The Act then provides that within 60 days of receipt of "a submitted certified claim," the contracting officer "shall . . . issue a decision; or . . . notify the contractor when the decision will be issued." Section 6(c)(2), 41 U.S.C. § 605(c)(2).

The Act applies to all contracts entered into 120 days after its enactment. It further provides that when a contract has been entered into before the effective date of the Act (March 1, 1979), the "contractor may elect to proceed under this Act with respect to any claim then pending before the contracting officer or initiated thereafter." Section 16, 41 U.S.C. § 601 note.

B. The plaintiff in this case seeks additional compensation under a construction contract with the United States Department of Agriculture for the extra cost it allegedly incurred because of construction delays resulting from bad weather. The contract was entered into in June 1976, almost three years before the effective date of the Act. The plaintiff filed its claim with the contracting officer in December 1979, more than nine months after the effective date of the Act. It sought an additional $267,320. The contractor did not certify its claim, as section 6(c)(1) requires.

The contracting officer, however, entertained and denied the claim. When the plaintiff notified the contracting officer that it intended to appeal, the officer forwarded the case to the Department of Agriculture Board of Contract Appeals ("the Board"). The plaintiff decided to seek direct review before this court. When it so informed the Board, the latter dismissed the appeal without prejudice.

The plaintiff then filed suit here. Although originally it asserted jurisdiction under both the Contract Disputes Act and the Tucker Act, 28 U.S.C. § 1491 (1976), apparently it now recognizes that we have no jurisdiction under the Tucker Act because the plaintiff has not exhausted its administrative remedies before the Board. The defendant has moved for summary judgment on the ground that we cannot entertain the suit under the Contract Disputes Act because the plaintiff failed to certify its claim.

II.

The requirement for certification of claims of more than $50,000 is an important part of the new procedures Congress provided in the Act for the handling of claims by government contractors. An important objective of Congress was to "discourag[e] the submission of unwarranted contractor claims." S.Rep.No.1118, 95th Cong., 2d Sess. 5, reprinted in [1978] U.S.Code Cong. & Ad.News 5235, 5239. One method of accomplishing this purpose was provided in section 5 of the Act, 41 U.S.C. § 604, which makes a contractor liable for the amount of any portion of its claim that it is unable to support because of misrepresentation or fraud. Another was the certification requirement.

"The purposes of the certification requirement are to discourage the submission of unwarranted contractor claims and to encourage settlements." Folk Construction Co. v. United States, Ct.Cl.No. 99–80C (order entered January 16, 1981). The importance Congress attached to the certification requirement is reflected not only in section 6(c)(1), which states that the contractor "shall" certify, but also in the provision in section 6(c)(2) that the contracting officer's obligation within 60 days to issue a decision or inform the contractor when he will do so arises only after the officer has received a "certified claim."

The legislative history of the certification requirement confirms the importance Congress ascribed to it. Since the certification requirement was added to the bill on the

floor of the Senate on the day on which the Senate passed the legislation, October 12, 1978, 124 Cong.Rec. 36266 (1978), which was the day before the House passed it, *id.* at 37074–76, the committee reports do not discuss the provision. The explanation of the amendments, however, offered by Senator Byrd, the amendments' sponsor, said that section 6(c) of the Act was "amended due to the concerns expressed by . . . [among others] Admiral Rickover" about time constraints. The amendments dealt also with Admiral Rickover's other concerns. *Id.* at 36267.

Admiral Rickover suggested the certification requirement on June 14, 1978, at hearings on the bill. *Contract Disputes Act of 1978: Joint Hearings on S.2292, S.2787 & S.3178 Before the Subcomm. on Federal Spending Practices and Open Government of the Senate Comm. on Governmental Affairs and the Subcomm. on Citizens and Shareholders Rights and Remedies of the Senate Comm. on the Judiciary,* 95th Cong., 2d Sess. 21 (1978). He said the bill should:

> [r]equire as a matter of law that prior to evaluation of any claim, the contractor must submit to the Government a certificate signed by a senior responsible contractor official, which states that the claim and its supporting data are current, complete and accurate. In other words, you put the contractor in the same position as our working man, the income taxpayer who must certify his tax return. . . . Some contractors contend that they are not required to disclose any facts which would undermine their claims.

*Id.* Admiral Rickover subsequently submitted written suggestions for amending the Act, which were reprinted in the report of the hearings in the middle of his testimony and which were substantially similar to the actual language of sections 6(c)(1) and (2). *Id.* at 13.

Admiral Rickover wanted to deter contractors from filing inflated claims which cost the government substantial amounts to defeat. He sought to do so by subjecting contractors to financial risk if their claims were unreasonable. *E.g., id.* at 5–7, 26–35.

Admiral Rickover viewed the certification requirement as a necessary prerequisite to the consideration of any claim. The provisions Congress adopted to include the certification requirement were based upon Admiral Rickover's written suggestions and fairly must be deemed to have incorporated his view concerning the effect of the certification requirement. *See United States v. Vogel Fertilizer Co.,* —— U.S. ——, ——, 102 S.Ct. 821, 830, 70 L.Ed.2d 792 (1982) ("[W]e necessarily attach 'great weight' to agency representations to Congress when the administrators 'participated in drafting and directly made known their views to Congress in committee hearings.' *Zuber v. Allen,* 396 U.S. 168, 192 [90 S.Ct. 314, 327, 24 L.Ed.2d 345] (1969).").

The import of the language of the Act and its legislative history is that unless a claim has been properly certified, it cannot be considered under the statute. As we said in *Folk,* "The statute thus requires that to be valid a claim must be properly certified." Unless that requirement is met, there is simply no claim that this court may review under the Act.

Consistent with this statutory language and history, the Armed Services Board of Contract Appeals has held that a claim cannot be considered until it is certified. *E.g., Newell Clothing Co.,* 80–2 BCA ¶ 14,774 (1980); *Harnischfeger Corp.,* 80–2 BCA ¶ 14,541 (1980); *Allied Materials & Equipment Co.,* 80–1 BCA ¶ 14,340 (1980). The Defense Acquisition Regulations state that a claim is not valid until it is certified. DAR § 1–314(b)(1), 45 Fed.Reg. 81402, 81406 (1980). The proposed Federal Acquisition Regulations are similar. FAR § 33.-001, 46 Fed.Reg. 9669 (1981). The construction of the statute by those charged with administering it is persuasive. *Sea-Land Service, Inc. v. United States,* 204 Ct.Cl. 57, 76, 493 F.2d 1357, 1368, *cert. denied,* 419 U.S. 840, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).

The plaintiff offers no excuse or justification for its failure to certify. Instead, it describes the lack of certification as "a harmless procedural omission of no substantial consequence" that has not prejudiced

the United States. As indicated, however, the certification requirement is an important part of the new procedures the Act provided. In view of the unequivocal nature of the requirement, we do not think it appropriate to inquire whether in the particular circumstances the lack of certification is prejudicial. Congress has determined that certification is necessary for there to be a valid claim under the Act.

The present case is unlike *Folk*, where we held that certification was not necessary. In that case the claim had been submitted seven months before the effective date of the Act, and the contracting officer decided the claim eight days after the effective date. We pointed out that the uncertified claim had been valid when it was submitted and ruled that "[t]here is no requirement that a claim be certified after it has been properly submitted." We held that "when a contracting officer renders a decision after the effective date of the Act on an uncertified claim submitted prior to that date, the contractor may proceed under the Act and appeal to this court." We found it unnecessary to reach the question "whether this court may entertain appeals from decisions of contracting officers upon uncertified claims submitted after the effective date of the Act."

█ The plaintiff points out that despite the lack of certification, the contracting officer fully considered the claim on the merits and rejected it. The contracting officer, however, had no authority to waive a requirement that Congress imposed. *See M–R–S Manufacturing Co. v. United States*, 203 Ct.Cl. 551, 561–62, 492 F.2d 835, 841 (1974).

The plaintiff's claim was filed more than nine months after the effective date of the Act, at a time when the contracting officer presumably was fully familiar with the certification requirement. The contracting officer's consideration of the merits of the claim in these circumstances suggests that he may have believed that the plaintiff was proceeding under the pre-Act procedures rather than under the new Act. This conclusion is also supported by the fact that when the plaintiff told the contracting officer that it intended to appeal, he immediately forwarded the case to the Board, as he would have done prior to the Act.

Finally, the plaintiff urges that we should not dismiss its suit because to do so could prejudice its substantial rights. It states that the time for appealing from the contracting officer's decision to the Board has expired. The Board's dismissal of the prior appeal, however, was without prejudice, and the defendant has represented that agency counsel would not oppose an attempt by the plaintiff to reinstate its appeal before the Board.

There is no reason to believe that the Board would not allow reinstatement. The plaintiff seems likely to obtain a full and fair review of its claim before the Board, with the right to subsequent judicial review in this court of any unfavorable decision by the Board. Although the plaintiff's trial *de novo* will be before the Board rather than before this court, that is the consequence of the plaintiff's own default in failing to certify its claim, as the Act requires.

## CONCLUSION

The defendant's motion for summary judgment is granted, and the petition is dismissed.