**CEDAR LUMBER, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–783.**

United States Court of Appeals,
Federal Circuit.

Aug. 20, 1986.

Joseph A. Yazbeck, Jr. and Paul L. Breed, Allen, Kilmer, Schrader, Yazbeck & Chenoweth, P.C., Portland, Or., for appellant.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett, Asst. Director and Sylvia Ford Brown, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee.

Before RICH and DAVIS, Circuit Judges, and BENNETT, Senior Circuit Judge.

BENNETT, Senior Circuit Judge.

This appeal to the court is from a decision of the Agriculture Board of Contract Appeals (AGBCA) dismissing the appeal of Cedar Lumber, Inc., for lack of jurisdiction. AGBCA held that it could not grant the relief Cedar requested, redetermination of rates for its timber removal contracts with the Forest Service, because in the absence

of some performance under the contracts such relief would amount to a declaratory judgment, a remedy outside the board's jurisdiction. We vacate and remand.

## OPINION

Cedar Lumber, Inc., entered into two separate contracts with the Forest Service for removal and purchase of timber from the Volcano and Lower Kay tracts in the Willamette National Forest. Cedar elected to have the Forest Service construct access roads to the tracts as authorized by the Forest Management Act of 1976, 16 U.S.C. § 1600, 1608 (1982). Both contracts specified in section C5.101 that if the roads were not completed within one year of November 15, 1981, the contractor could request rate redetermination for the remaining volume of timber according to an agreed formula set out in contract section B3.31, Scheduled Rate Redetermination. The Forest Service gave Cedar written notice under date of November 12, 1982, that the access roads to the Volcano and Lower Kay tracts were completed on November 3 and 12, 1982, respectively.

Cedar disagreed that the roads were completed and notified the contracting officer that it was seeking rate redetermination in the amounts of $1,018,469.46 for Volcano and $861,721.60 for Lower Kay. Cedar had not yet begun work on either contract. The contracting officer found that the roads were completed and were ready for use by November 15, 1982, and that Cedar was not entitled to the rate redetermination it sought. Cedar appealed that decision to the Board of Contract Appeals (AGBCA No. 85–221–1 and No. 85–214–1). On the motion of the Forest Service, the board dismissed both appeals for lack of jurisdiction on August 30, 1985. 85 BCA ¶ 18,346. Cedar now appeals that dismissal.

The government agrees with the board that it had no jurisdiction because Cedar sought a declaration by the board that if and when it commenced harvesting the timber under the contract the rate it would pay for the timber would be determined pursuant to contract section B3.31, Scheduled Rate Redetermination. The government says this is a request for a declaratory judgment which the board had no jurisdiction to consider for the instant contract since it is governed by the Contract Disputes Act of 1978. 41 U.S.C. §§ 601–13 (1982).

Although the contractor argues that the board does have such jurisdiction, it also argues that the court can resolve the appeal in its favor without deciding the larger issue of board authority for declaratory judgment. Cedar says that we need only to hold that the board had the authority to enforce a remedy provided for in the contract. We agree with the contractor on this latter point but do not find that the contract language provides for the relief sought, assuming timely road completion. The key provision here, noted above, is C5.101 which reads in pertinent part:

If Forest Service is responsible for road construction and the actual date of road completion is one year or more after the completion date stated above [November 15, 1981], Purchaser may request a rate redetermination under B3.31 for remaining volume. Such request must be made within 30 days of notification that road construction has been completed. Upon receipt of such request Forest Service shall redetermine rates using standard methods in effect on the completion date of road construction. Rates to be established shall apply to all unscaled timber removed from Sale Area after the effective date of the rate redetermination. Forest Service shall in no way be responsible for any delay or damage caused by road contractor in performing the road construction except such delay as may be the fault or negligence of Forest Service.

As used in this provision, construction of a road is completed when: "(b) Forest Service constructs road and furnishes Purchaser with written notice authorizing use of road."

■ There is no dispute here concerning the facts that a timely request for rate

redetermination was made by Cedar, that no timber was removed from the tracts by Cedar, and that the Forest Service gave written notice authorizing use of the roads. While Cedar disputes as a fact that the roads were complete and notice was timely, we note that the fact of completion was a determination the Forest Service was solely authorized to make by the terms of the contract. The contractor is not shown to have tried out the roads to demonstrate that the Forest Service's judgment about their condition was an abuse of discretion. Yet, Cedar admits "for it to succeed on its claim for a rate redetermination . . . it must show that the roads were not reasonably suitable for the harvest of timber."

Cedar states that it seeks nothing more than the enforcement of the remedy made available to it under the aforementioned clauses but considers C5.101 and B3.31 as mandatory on the Forest Service, where the agency fails to complete the roads within the time period specified. The redetermination clause only identifies the mechanics by which redetermination is to be performed. While taken together the clauses spell out a remedy presumably enforceable by the board under section 8(d) of the Contract Disputes Act, 41 U.S.C. 607(d) (1982), enforcement hinges on failure of the Forest Service to complete the roads on time and in a manner reasonable for their use for the intended purpose of harvesting timber. The board did not reach this issue.

■ The government also argues that since Cedar had not begun contract performance at the time it submitted its claim for a rate redetermination, it had no right to and was not seeking an actual monetary award because its claim was for money not yet accrued and owing. The government also contends that Cedar is wrong in arguing that it could only preserve its claim by refusing to perform its contract. On the contrary, the government says that until there was performance, in whole, or as the board said "even for one month's disputed billing," it could not claim any money was due. Section 9.2(i) of the contract expressly provides that "[e]xcept as the parties may otherwise agree, pending final resolution of a claim of the contractor arising under the contract the contractor shall proceed diligently with performance of the contract in accordance with the contracting officer's decision." *See also* 41 U.S.C. § 605(c) (1982). The board did not address these issues but noted that it would have been, in any event, without jurisdiction because the claims for money were not certified in accordance with 41 U.S.C. § 605(c). Section C9.2(d) of the contract also requires certification. Cedar disputes lack of certification. We cannot tell from the board's discussion how it reached this conclusion which is at odds with the clear language of the claim letters of February 9 and August 20, 1984. We note also that the contracting officer who considered the claims on the merits expressed no doubt about proper certification. On the present state of the record we reject, as unsupported by substantial evidence, the board's finding that the claims here were not certified. 41 U.S.C. § 609(b) (1982).

■ We hold that the board committed error in this case of contested factual issues by ruling that it had no jurisdiction because Cedar actually sought a declaratory judgment (without calling it that) which is not authorized by the Contract Disputes Act. We find it unnecessary here to decide whether the board could grant such a judgment in a proper case. What we do decide is that the board should have the opportunity to determine the appeal to it on the merits, assuming proper claim certification, by resolving the fact issue of whether the roads had been reasonably completed for Cedar's use in harvesting timber, under such requirements as applicable thereto, and if so whether Cedar was given timely notice and whether Cedar, considering its lack of performance, has stated a claim under the contract or for breach.

VACATED and REMANDED.