ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Tokyo Company | ) ASBCA No. 59059 |
| | ) |
| Under Contract No. W90U3Z-08-M-8031 | ) |

APPEARANCE FOR THE APPELLANT:      Mr. Beniamen Monadhil
      Owner/General Manager

APPEARANCES FOR THE GOVERNMENT:      Raymond M. Saunders, Esq.
      Army Chief Trial Attorney
      Stephanie B. Magnell, Esq.
      MAJ Lawrence Gilbert, JA
      Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE TING
## ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Tokyo Company submitted a $920,602 claim with a certification without a physical signature and bearing only the company's stamp and the typed written name of its general manager. The contracting officer (CO) denied the claim and Tokyo Company appealed. The Board, *sua sponte*, sought the parties' views on what effect the lack of a physically signed claim certification has on the Board's jurisdiction over the appeal. In response, the government moves to dismiss for lack of jurisdiction. Tokyo Company maintains that we have jurisdiction. We grant the government's motion and dismiss this appeal for lack of jurisdiction.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1. On 26 September 2008, Joint Contracting Command Iraq/Bucca, Regional Contracting Center-Bucca, awarded Contract No. W90U3Z-08-M-8031 (Contract 8031) to Khairat Alshemal Company (Khairat Alshemal). Samem Mohammed signed the contract for Khairat Alshemal. (R4, tab 1) The contract, in the amount of $1,432,810.00, was for the delivery and placement of T-Walls, SCUD bunkers and Texas Barriers for personal protection from direct and indirect fire and blast mitigation to Camp Bucca, Iraq (*id.* at 1, 19).

2. On 2 March 2009, the CO issued a cure notice to Khairat Alshemal citing the need to improve the quality of the T-Walls. When Khairat Alshemal's next delivery was unacceptable, the CO issued a show cause notice on 16 March 2009. (R4, tab 6)

3. On 19 April 2009, the CO issued Modification No. P00001 to change the contract issuing office from RCC Bucca Contracting, JCC-I/A Camp Bucca, Iraq, to MNSTCI Support Division, GRD-JCCI/A. Khairat Alshemal was identified as the contractor; and Mr. Samem Mohammed was identified as the "POC" or point of contact. (R4, tab 2)

4. The CO partially terminated Khairat Alshemal's contract for all remaining undelivered items for cause on 28 May 2009. The Notice of Termination for Cause told Khairat Alshemal that it could appeal the decision to the agency board of contract appeals or bring an action in the United States Court of Federal Claims. (R4, tab 6)

5. On 20 October 2009, the CO issued Modification No. P00002 to Khairat Alshemal confirming the partial termination for cause and paying Khairat Alshemal $85,172.00 for the 188 T-Walls out of the 3,067 deliverables the government accepted under the contract. The modification also de-obligated the unpaid contract balance of $1,347,638.00. It included language that Khairat Alshemal had the right to appeal the CO's decision or to file suit in the Court of Federal Claims. (R4, tab 3)

6. On 16 December 2009, Samem Mohammed, as General Manager of Khairat Alshemal submitted Invoice No. 25 in the amount of $85,172.00 for the 188 T-Walls the government accepted (R4, tab 7). On 7 January 2010, the government made final payment under the contract to Khairat Alshemal in the amount of $85,726.46 on Voucher No. 194080[1] (R4, tab 8).

7. After the Army demobilized from Iraq at the end of 2011, responsibility for the Army's Iraq contracts was transferred to Rock Island Arsenal, Illinois (answer, part II, ¶ 61). According to Joan F. Wysoske (CO Wysoske), the CO at the Army Contracting Command, Tokyo Company submitted Invoice No. 13 dated 15 February 2010 under Contract 8031 for payment. The invoice was for $920,602, and bore the stamp of "TOKYO COMPANY For general contracting & services Baghdad-Iraq Build 23 St Al-Karadaa" above the typed words "General Manager of Company BENIAMEN MONADHIL." (R4, tabs 11, 19) On a separate sheet, an undated Contract Disputes Act certification "Per FAR 33.207(C)" was submitted. Like the claim, the claim certification also bore the stamp "TOKYO COMPANY For general contracting & services Baghdad-Iraq Build 23 St Al-Karadaa" above the typed words "General Manager of Company BENIAMEN MONADHIL." (R4, tab 20)

8. According to CO Wysoske, when Tokyo Company submitted Invoice No. 13, it also submitted (1) Modification No. P00003 purportedly changing the name

---

[1] The amount actually paid was slightly higher than that invoiced due to delay in payment.

Khairat Alshemal Company to Tokyo Company and (2) Modification No. P00004 purportedly terminating Contract 8031 partially and authorizing payment in the amount of $920,602 (R4, tabs 11, 14, 17).

9. Between 7 August 2013 and 5 September 2013, Tokyo Company through its general manager Beniamen Monadhil exchanged emails with CO Wysoske's office concerning Invoice No. 13 (R4, tab 10).

10. CO Wysoske issued her decision by letter dated 11 September 2013. The decision denied payment for Invoice No. 13 stating:

> The "new" contract, modifications P00003 and P00004 cannot be located in MSST [Multi System Search Tool] or any other government data base. There [sic] documents cannot be verified.
>
> Contractor has failed to provide appropriate documentation for payment. Invoice 13 will NOT be paid and the contract shall remain closed.

(R4, tab 11) Tokyo Company appealed the CO's decision by email dated 5 December 2013. The Board docketed the appeal on 5 December 2013 as ASBCA No. 59059.

11. The Board advised the parties by letter dated 24 February 2014 that Tokyo Company's claim certification "appears to lack a signature." Forwarding the Board's precedent, *Hawaii CyberSpace*, ASBCA No. 54065, 04-1 BCA ¶ 32,455, the Board solicited the parties' views on whether the apparent lack of a claim certification signature would affect the Board's jurisdiction over the appeal.

12. In his 27 February 2014 response to the Board, Beniamen Monadhil stated that the location of the stamp "above the name General Manager of Tokyo Company…clearly shows that this stamp has been stamped by Mr. Beniamen Monadhil by himself and represents himself." The letter went on to explain that "Mr. Beniamen Monadhil is the only person who hold[s] this stamp and the only person who can use it, and Mr. Beniamen Monadhil bears all legal liabilities and commitments for any document stamped by this stamp. This stamp has the same effect and the legal responsibilities of the signature." We understand Beniamen Monadhil to admit that he did not sign the claim certification, and further understand his position is that a stamp bearing only the company name was as effective as his signature since only he had the stamp and only he could use it. Mr. Beniamen Monadhil also argues that the CO did not have any objection to his use of the stamp because she included the stamped certification in the Rule 4 file.

3

13. Responding to the Board on 14 March 2014, the government contends that under FAR 33.207, claims in excess of $100,000 must be certified. It contends that although a defective certification would not deprive the Board of jurisdiction under FAR 33.207(f), the total lack of a signature, as was the case here, was not a defective certification situation that could be cured. The government maintains that, consequently, the Board lacks jurisdiction over Tokyo Company's appeal and it must be dismissed.

## DECISION

For claims of more than $100,000, the Contract Disputes Act (CDA) under which Tokyo Company brought its appeal requires that the contractor certify that – (A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor. 41 U.S.C. § 7103(b). Implementing this CDA provision, the FAR provides that "[t]he certification may be executed by any person duly authorized to bind the contractor with respect to the claim." FAR 33.207(e). Our precedents have established that to "execute" a CDA certification requires a certifier to sign the certification document. *Teknocraft Inc.*, ASBCA No. 55438, 08-1 BCA ¶ 33,846; *Hawaii CyberSpace*, 04-1 BCA ¶ 32,455 at 160,535.

In determining whether a CDA certification was properly executed, we have applied the definition of *"Signature* or *signed"* in FAR 2.101: Signature or signed means "the discrete, verifiable symbol of an individual which, when affixed to a writing with the knowledge and consent of the individual, indicates a present intention to authenticate the writing. This includes electronic symbols." *Teknocraft*, 08-1 BCA ¶ 33,846 at 167,504. Black's Law Dictionary defines the term "signature" to mean "[a] person's name or mark written by that person or at the person's direction." BLACK'S LAW DICTIONARY 1387 (7th ed. 1999). Also, "The signature…may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer." RESTATEMENT (SECOND) OF CONTRACTS § 134 (1979). Thus, without some action meeting the requirements of FAR 2.101 by signing a person's name, there can be no intent to adopt or authenticate the writings as that of the signer.

We want to make clear at the outset this is not a case involving electronic signature. A traditional signature is a particularized rendering of a person's name. Or, to put it in another way, it is a person's name written in a particular way to identify him specifically. In this case, the stamp bearing a company's name, explaining what the company does, and its address – "TOKYO COMPANY For general contracting & services Baghdad-Iraq Build 23 St Al-Karadaa" – and the typed but unsigned name "BENIAMEN MONADHIL" as "General Manager of Company" on the certification provided are not particularized and do not specifically identify the person executing the

4

certification. Because neither of the above identifies the person certifying the $920,602 claim specifically, Tokyo cannot convey the necessary intent to be bound by what the law requires a contractor to certify when submitting a claim exceeding $100,000.

FAR 33.207(f) provides that "[a] defective certification shall not deprive a court or an agency BCA of jurisdiction over that claim." FAR 33.201 however, defines defective certification to mean "a certificate which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person duly authorized to bind the contractor with respect to the claim. *Failure to certify shall not be deemed to be a defective certification.*" (Emphasis added) Thus, the altogether lack of a signature on a certification is not a defect that can be cured under FAR 33.201 such that we can retain jurisdiction. *Sygnetics, Inc.*, ASBCA No. 56806, 10-2 BCA ¶ 34,576 at 170,465 ("The absence of a signature on a CDA certification renders it ineffective for any purpose."); *Teknocraft*, 08-1 BCA ¶ 33,846 at 167,504 (holding the generic typewritten notation "//signed//" is not a discrete, verifiable symbol for purposes of certifying a CDA claim); *Hawaii CyberSpace*, 04-1 BCA ¶ 32,455 at 160,535 ("Considering the legislative purposes for certification...we conclude that the failure to sign is more akin to a 'failure to certify.'").

Finally, the fact that the CO did not object to the lack of a proper certification but rendered a decision on the Tokyo claim is inconsequential. *Paul E. Lehman, Inc. v. United States*, 673 F.2d 352, 356 (Ct. Cl. 1982) ("The contracting officer... had no authority to waive a [certification] requirement that Congress imposed.").

## CONCLUSION

Because Tokyo Company's claim is required to be certified in accordance with 41 U.S.C. § 7103(b), and because it failed to properly sign or execute its claim certification in accordance with the requirement of FAR 33.207(e), this appeal is dismissed for lack of jurisdiction.

Dated: 23 April 2014

PETER D. TING
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

5

I concur                                    I concur

MARK N. STEMPLER                            RICHARD SHACKLEFORD
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59059, Appeal of Tokyo Company, rendered in conformance with the Board's Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals